IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No: 18-po-07009-NRN

UNITED STATES OF AMERICA,

Plaintiff,

v.

DUSTIN TAYLOR,
Defendant.

---

# ORDER

**Entered by Magistrate Judge N. Reid Neureiter**

## 1. INTRODUCTION

This matter came before the Court on December 21, 2018 for trial. Mr. Dustin Taylor was charged on August 10, 2018 by citation with camping in a prohibited area, in violation of 16 U.S.C. § 552 and 36 C.F.R. § 261.58(e). This Court has jurisdiction under 18 U.S.C. § 3231.

Prior to trial, the Parties conferred and jointly agreed that there are no disputed issues of fact. The only contested question in this case, as framed by the parties, is whether, under the stipulated facts, Mr. Taylor "camped" in a prohibited area by sleeping overnight in his car.

The decision of the Parties to stipulate to facts and certain agreed-upon exhibits, and not present any witnesses who might have been able to answer follow-up questions, certainly reduced the time and effort necessary for the presentation of the case. The Court is appreciative of the cooperation of counsel and the expedited nature of the evidentiary presentation. However, as described below, the inability of the United

States to flesh out some of the evidentiary questions raised in the Court's mind by the evidence that *was* presented may have been responsible for leaving the Court with reasonable doubts as to whether all elements of the offense had been proved against Mr. Taylor. As a result of these reasonable doubts, the Court must acquit Mr. Taylor of the charged offense.

**2. FACTUAL FINDINGS BASED ON STIPULATED EXHIBITS, STIPULATED FACTS, AND ADDITIONAL FACTS CONCEDED BY THE PARTIES AT TRIAL**

Prior to argument, the Parties stipulated to the admissibility of ten government exhibits, which included, among other things: the citation itself and the accompanying Statement of Probable Cause; photographs of the location where the citation was issued (including photographs of posted "no camping" signs); an e-mail (presumably from a Forest Service representative) stating that parking in the location is not itself prohibited; a picture of a sign stating "NO CAMPING, CAMPFIRES, OR SHOOTING WITHIN ¼ MILE OF THIS ROAD"; and various maps and diagrams showing the location where the citation was issued in relation to the Cache La Poudre River and the Stove Prairie Road.

The following facts were stipulated by the Parties, either pre-trial submissions, via the admitted exhibits, or orally before the Court:

1. At all relevant times, the Roosevelt National Forest is Special Territorial Jurisdiction of the United States, located in the State and District of Colorado.
2. On August 10, 2018, at approximately 7:35 a.m., a Forest Protection Officer in the National Forest Service, encountered the defendant, Dustin Taylor, asleep in his Nissan Pathfinder vehicle. There is no evidence as to where Mr. Taylor was in his vehicle. Thus, the Court does not know, one way or another, whether Mr.

Taylor was asleep in the back of his Pathfinder, in a sleeping bag in the back, curled up in the middle bench seats, or whether he merely nodded off to sleep behind the wheel.

3. The vehicle was parked in a pull-off area in the Roosevelt National Forest on the Stove Prairie Road that was part of a quarter-mile camping closure area along the road.

4. The pull-off area has two posted "no camping" signs. Photographs of the signs were admitted. The signs are legible, obvious, and easily visible.

5. The signs were posted under UFC-01-2017, a lawful order of the Forest Service pursuant to 16 U.S.C. § 551, and 36 C.F.R. § 261.50(a) and (b).

6. The Forest Protection Officer recorded by GPS the latitude and longitude of the vehicle, which is within one quarter-mile of the Stove Prairie Road.

7. Mr. Taylor admitted he had slept in that location in his vehicle overnight, and that he was not aware of the prohibition on camping.

8. There were no items of Mr. Taylor's outside of his car. There was no indication that Mr. Taylor had started any campfire. There is no evidence that Mr. Taylor ever left his car or did anything other than park the vehicle and fall asleep.

9. There is no evidence as to the time when Mr. Taylor parked his car or when he fell asleep. There was no physical evidence that, at the time Mr. Taylor parked his car, he had the intention of staying there overnight.

10. The Statement of Probable Cause (Ex. 1 at 2), which has been admitted into evidence, recounts the pertinent parts of the Officer's interaction with Mr. Taylor as follows: I "visually observed a vehicle parked in a pull-off on the Stove Prairie

Road. I approached and noticed one individual, Dustin Taylor, sleeping in the vehicle. I woke him and asked how long he had been there, he responded overnight. I asked if he was aware of the ¼ mile camping closure along the road, he responded that he was not. I pointed out two 'No Camping' signs located in the same pull-off as his vehicle. . . . I wrote Dustin Taylor one camping citation. He was cooperative throughout the contact."

11. The Officer issued Mr. Taylor a citation for camping within one-quarter mile of the Stove Prairie Road, in violation of 36 C.F.R. § 261.58(e).
12. Based on maps admitted into evidence, there were two identified Forest Service campsites within a mile or two of the location where Mr. Taylor parked. Mr. Taylor would have been able to lawfully spend the night in his car in either of those campsites.
13. 36 C.F.R. § 261.58 prohibits "Camping" when provided by an appropriate Forest Service order.
14. The pull-off area is a lawful parking area, including overnight parking.
15. Thus, users of the National Forest are permitted to park their cars in the area and leave them overnight for the purpose of hiking, fishing, or otherwise enjoying the National Forest.
16. As explained in the e-mail admitted as Government Exhibit 10, "Parking itself is not prohibited, only overnight occupancy of the vehicle as found in the definitions of camping and camping equipment in 36 C.F.R. 261.2." "In theory, one could park, hike .25 miles into the forest, and camp – legally."

17. A violation of 36 C.F.R. § 261.58(e) is punishable as a Class B misdemeanor, carrying a fine or not more than $5,000 for an individual or $10,000 for an organization, or imprisonment for not more than 6 months, or both.

### 3. REGULATORY DEFINITIONS

Forest Services regulations define the term "camping" as follows: "Camping means the temporary use of National Forest System lands *for the purpose of overnight occupancy* without a permanently-fixed structure." 36 C.F.R. § 261.2 (emphasis added).

The term "camping equipment" is defined to mean "personal property used in or suitable for camping, *and includes any vehicle used for transportation* and all equipment in possession of a person camping. Food and beverage are not considered camping equipment." 36 C.F.R. § 261.2 (emphasis added).

### 4. ANALYSIS

The question for this Court is whether, based on the stipulated facts and admitted exhibits, the United States has proved beyond a reasonable doubt that Mr. Taylor was "camping" within the meaning of the Forest Service regulations when he parked in the pull-off area and fell slept overnight, only to be awakened in the morning by the questioning Officer.

The United States argues that the stipulated evidence is sufficient to support a conviction. In its pre-trial brief, the United States argues that to find Mr. Taylor guilty of violating 36 C.F.R. § 261.58(e), it need only prove that (1) upon lands administered by the United States Forest Service of the United States Department of Agriculture, (2)

Defendant camped overnight, (3) in an area which was closed to camping by a closure order. (Dkt. #10 at 3).

I agree with the United States on the first and third elements of the offense. I also find that these two elements have been proved beyond a reasonable doubt. Mr. Taylor was found in his vehicle on lands administered by the United States Forest Service. He was certainly "occupying" the land. The area was closed to camping by a proper and lawful closure order. The closure of the parking area to camping was well-posted with obvious, visible, and legible signs. The fact that Mr. Taylor claimed not to know that this was a "no camping" area is irrelevant. As the United States argues, "ignorance of the law is no excuse." *United States v. Reddick*, 203 F.3d 767, 771 (10th Cir. 2000).

However, I disagree with the United States' formulation of the second element of the offense. The case cited by the United States for this element is *United States v. Tooley*, 521 F. App'x 644, 2013 WL 1136954 (10th Cir. 2013). *Tooley* was an unpublished decision affirming a conviction of a pro se defendant, Mr. Tooley, for violating 16 U.S.C. § 551 and 36 C.F.R. § 261.58(e). Mr. Tooley's conviction was affirmed, not after a review of the elements and proof of the offense, but because Tooley on appeal had failed to make any coherent arguments at all. As the Tenth Circuit said there, "In sum, Mr. Tooley's briefs are wholly devoid of specific argument, legal citation, factual averment or citation to the record. In such a case, we have no choice but to affirm the district court's dismissal of Mr. Tooley's appeal." 521 F. App'x 644, 2013 WL 1136954 at *2. The *Tooley* opinion contains no analysis of the definition of "camping" under the Forest Service regulations.

In its Pre-trial Response Brief, the United States did helpfully provide a copy of the statement of probable cause from the *Tooley* matter. (Dkt. #14-1.) The *Tooley* probable cause statement is interesting because of the additional factual details it contains that are not present in the instant case:

> Mr. Tooley told me he arrived about 8:30 pm last night and had slept in the back of his pickup truck. I observed a sleeping bag and pillow in the back of his truck. Mr. Tooley told me he had seen the two large night reflective signs he past [sic] stating the area was closed to camping. He said he knew the first 8 miles of the road were closed to camping but thought he had "gone far enough." He was camped at mile Post 4.5. He also stated he thought he was "ok" because he was "off the road." He told me he had been there before and was familiar with the area. Mr. Tooley told me he was "homeless" and living in his truck. He was cooperative and polite throughout.

United States District Court Violation Notice F4205831, 6/13/2010 (Dkt. #14-1). Thus, the *Tooley* conviction was supported by the following additional facts: (1) Mr. Tooley had arrived at the no-camping area at 8:30 p.m. the prior evening. (2) By his own admission, Mr. Tooley's intent in arriving was to spend the night. (3) The sleeping bag and pillow constituted physical evidence of Mr. Tooley's preparation and intent to spend the night in his vehicle in the designated "no camping" area. Mr. Tooley obviously had intended to spend the night in his vehicle and had made preparations to do the same. None of that information is present in this case.

By contrast, in this case, the only evidence I have is that Mr. Taylor was found asleep in his car in the morning and "he had slept in that location in his vehicle overnight." Stipulation of Fact #5 (Dkt. #12 at 2). There is no additional evidence as to Mr. Taylor's purpose or intent when he pulled off the road.

Which brings me back to the definition of "camping" under the Forest Service Regulation: "***Camping*** means the temporary use of National Forest System lands ***for***

7

***the purpose of*** overnight occupancy without a permanently-fixed structure." 36 C.F.R. § 261.2 (emphasis added). The regulation does not define camping as mere overnight occupancy of the National Forest System lands. The clause "for the purpose of" must mean something. Indeed, one of the fundamental canons of statutory interpretation, referred to as the "Surplusage Canon," is that, if possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018). *See also Chevron Mining, Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017) ("The canon against surplusage indicates that we generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have a distinct meaning.").

"Purpose" is defined in Webster's II New College Dictionary (ed. 1995) as, among other things, "a desired or intended result or effect" and "to resolve or intend to accomplish or perform. "Purposeful" is defined as "having a purpose, intention." The regulatory definition of "camping" could have omitted the words "the purpose of" and merely defined camping "as the temporary use for overnight occupancy." In that case, proving that someone had passed the night in a designated "no camping" area, without more, would be sufficient to support a conviction. But the regulation does not read that way. Instead, it includes the "for the purpose of" language, suggesting that for "camping" to occur, there must have been an intention on the part of the charged party to occupy the location overnight. Thus, I disagree with the United States' position that 36 C.F.R. § 261.2 "contains no intent element." (Dkt. #14 at 2.)

This leads to two conclusions. First, it does not appear necessary for someone actually to spend the entire night ("overnight") in an area closed to camping to be found in violation of the "no camping" regulation. If a person arrives at 8 p.m. in an area closed to camping and sets up a tent with sleeping pads and sleeping bags, indisputably preparing to spend the night, and is discovered at 11 p.m., then that person has used the National Forest System lands "for the purpose of overnight occupancy" even though he did not manage to make it through the night before being discovered. That person had the intention to spend overnight there, and that is enough.

Second, and by contrast, if a person ends up spending the night in a designated no-camping area without ever having had any intention or purpose to do so, then the mere fact that she is discovered in the morning, without more, cannot form the basis for a conviction, because there no evidence that she ever had the requisite purpose or intent. An example of this might be a person whose car breaks down in a "no camping" area. She ends up spending the night there, without ever having had the intention or purpose to do so, and therefore cannot be deemed to have been "camping" within the regulation's definition. Another example might be a person who, in the early evening, is tired while driving, sees a designated parking area, and resolves to sleep for a couple of hours and get back on the road. But his pre-set alarm malfunctions and the person sleeps through until morning, contrary to his intended purpose in using the Forest Service Land. The person who mistakenly stays overnight in a no-camping zone cannot be said to have been "camping" as defined by the Forest Service because, although he did occupy the land overnight, he did not use the land with the requisite intent—for "the ***purpose*** of overnight occupancy."

It is important here to clarify that whether Mr. Taylor knew the area was a designated "no camping" zone is irrelevant. I agree with the United States that there was adequate notice, both with posted signs and via appropriately published orders of the Forest Service. Thus, I do not find that the Government's case fails because it failed to prove that Mr. Taylor knew he was in a designated "no camping" area. I also agree with the United States that the Forest Service's definition of "camping" is a reasonable one. There can be many definitions of camping, whether in a huge recreational vehicle, or sleeping in a bag under the stars. The Forest Service is entitled to reasonably define "camping" as it sees fit. Mr. Taylor's alleged ignorance of what constitutes "camping" under a valid Forest Service regulation is no defense to the charge against him.

During argument at trial, the United States argued that Mr. Taylor's admission that he had slept in his car overnight in the "no camping" area was enough to justify a conviction. This argument mirrors the United States' position in its Trial Brief:

> Officer Overstreet observed Defendant sleeping in the car. Upon waking Defendant, Officer Overstreet asked Defendant how long he had been there, and Defendant responded "overnight." ***By this admission, Defendant admitted that he was temporarily using the National Forest System for the purpose of overnight occupancy without a permanently-fixed structure***.

(Dkt. #10 at 4) (emphasis added). But Mr. Taylor's admission that he had been in his car overnight is not the same as Mr. Taylor admitting that doing so had been his purpose and intent. It is in this way that the evidence supporting the affirmed conviction of Mr. Tooley in 2010 differs from this case. Mr. Tooley had admitted he was homeless and was living out of his vehicle. Mr. Tooley admitted he had pulled into the no-camping area at 8:30 p.m. the night before. The officer who issued the citation had seen Mr. Tooley's sleeping bag and pillow in the back of Tooley's vehicle. Beyond a reasonable

doubt, Mr. Tooley had used the National Forest Service Land "for the purpose of overnight occupancy." The same cannot be said of Mr. Taylor, largely because there is no evidence to support this conclusion. If there had some additional evidence that Mr. Taylor had parked his car in the pull-off area with the full intention and purpose of sleeping there overnight, then the outcome here may have been different. But, based only on the stipulated evidence, I cannot conclude beyond a reasonable doubt that Mr. Taylor used the Forest Service Land "for the purpose of overnight occupancy."

A word should be said about the United States' implication that an acquittal in this instance will have potentially profound adverse impacts on the National Forest and the scenic areas and rivers that the Forest Service is charged with protecting. The United States argues that acquitting Mr. Taylor here "would place the Forest Service's enforcement efforts at the mercy of visitors who do not care to learn about the rules that govern their conduct, and would threaten the Forest Service's ability to fulfill its mission to 'sustain the health, diversity, and productivity of the Nation's forests and grasslands to meet the needs of present and future generations'." (Dkt. #14 at 1-2) (quoting United States Forest Service, *What We Believe*, https://www/fs/fed/us/about-agency/what-we-believe (last visited December 13, 2018)).

The Forest Service's articulated goals are laudable. But I disagree that this decision means that hundreds or thousands of National Forest users will now be permitted, without consequence, to intentionally sleep overnight in their cars in areas where camping is prohibited. Intentionally sleeping overnight in a car in a no camping area is and remains unlawful. But to obtain a conviction for camping in a designated "no camping" area, the government must present some evidence that the charged party had

the original intention of spending the night in the area, i.e., was using it "*for the purpose of overnight occupancy.*" In this judge's opinion, that is what was missing in this case.

## 5. CONCLUSION

The United States proved that the Defendant occupied the National Forest Lands overnight. But the United States failed to prove beyond a reasonable doubt that the Defendant had used National Forest Lands for "the purpose of overnight occupancy." The United States therefore failed to prove beyond a reasonable doubt that the Defendant was guilty of the charged offense. The Court therefore **ORDERS** that the Defendant is hereby acquitted of the charge contained in the violation notice.

BY THE COURT

Date: January 2, 2019
Denver, Colorado

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge